# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

v.

DWIGHT HENRY,

    Defendant.
_____/

CASE NO. 08-20095
HON. LAWRENCE P. ZATKOFF

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 7, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Suppress Statements [dkt. #14]. The government filed a response, along with exhibits, and the Court held an evidentiary hearing on July 1, 2008. Following the hearing, Defendant filed a supplemental brief to which the government has responded. After hearing testimony from Defendant and the agent-in-charge in this case, and thoroughly considering the parties' respective papers, the Court denies Defendant's motion.

## II. BACKGROUND

In April 2007, Agent Michael Coleman of the Bureau of Alcohol Tobacco and Firearms (ATF), and members of the Violent Crimes Task Force, while executing a search warrant in an unrelated case, recovered five firearms from a house in Detroit. One of the guns, a 40-caliber, semi-automatic rifle, was linked to Defendant. Upon learning that Agent Coleman had tried to contact him, Defendant called Agent Coleman and agreed to speak with him.

On May 10, 2007, Agent Coleman went to Defendant's residence in Detroit, accompanied by Deputy Ferris of the Wayne County Sheriff's Department and Officer Stopczynski of the Detroit Police Department. Upon arriving at the home, the agents briefly spoke with Defendant inside the residence. After several minutes of fluid conversation, Defendant's 21-year-old nephew began interrupting the interview, and the agents asked Defendant if he would be willing to speak outside. The nephew continued to disrupt the interview, insisting that the agents speak with Defendant inside the house. Defendant eventually agreed to speak outside, and the agents escorted him to a Suburban truck parked outside the house. The Suburban was located approximately fifteen to twenty feet from the house. Defendant was seated in the rear-passenger seat, which was the side closest to the house. Agent Coleman sat in the front-passenger seat while the other officers occupied the driver's side seats. At this point, the parties' versions of the events differ.

According to the agents, Defendant voluntarily left the home to speak with them in the Suburban. At no point was Defendant placed under arrest, and the agents maintain that he was free to end the conversation and leave the vehicle at any point. Before beginning the substance of the conversation with Defendant, Agent Coleman read Defendant his *Miranda* rights. Defendant agreed to waive these rights, and then signed a form entitled "Waiver of Right to Remain Silent and of Right to Advice of Counsel." That form contained written versions of *Miranda* warnings, which Defendant initialed. Furthermore, the form contains the following written waivers, both signed by Defendant:

> (1) "I have read this statement of my rights and it has been read to me, and I understand what my rights are"; and

> (2) "I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my rights, and

2

I am willing to make a statement and answer questions."

Following Defendant's signatures, Agent Coleman certified that "the foregoing Waiver of Right to Remain Silent and Right to Advice of Counsel were read by me to the above signatory, and that he/she also read it and has affixed his/her signature hereto in my presence." The agents assert that after Defendant waived his *Miranda* rights, they spoke with him for thirty to forty minutes, during which Defendant made several incriminating statements. The substance of the conversation was memorialized in a separate written form, which Defendant read and signed. After the interview, Defendant left the vehicle and returned to his house.

In contrast to the agents' version of events, Defendant states that once he was in the Suburban he did not feel free to leave. Defendant claims that prior to receiving his *Miranda* rights and waiving them, the agents questioned him for approximately thirty minutes, during which time Defendant made several incriminating statements. Defendant asserts that the agents also threatened him and characterized the atmosphere as contentious. Specifically, Defendant stated that when he first entered the Suburban, Agent Coleman blocked the passenger door through which Defendant entered and became hostile, using foul language and threatening Defendant with jail if he did not provide information about the gun. Finally Defendant maintains that the agents presented him with his *Miranda* rights and the written waiver forms at the same time and only after he made the incriminating statements. However, Defendant admitted that he was never actually placed under arrest, physically moved or handcuffed, and believed that he was able to fend for himself.

Defendant is currently charged in a one-count indictment with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Defendant seeks to suppress the statements he made during the interrogation on May 10, 2007, based on alleged *Miranda* violations.

3

## III. ANALYSIS

Defendant claims that the agents involved in this case violated his rights under *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), by engaging in a two-step interrogation procedure in which they questioned Defendant in a custodial setting before giving him his *Miranda* rights, obtained incriminating statements, gave Defendant his *Miranda* rights, and then obtained a written waiver. Defendant claims that this technique is barred by the Supreme Court's decision in *Missouri v. Seibert*, 542 U.S. 600 (2004), and that his statements should be suppressed. Defendant also claims that his statements should be suppressed because they were coerced and, therefore, made involuntarily.

In response, the government contends that Defendant was not entitled to *Miranda's* protections because he was not in custody at the time he made the statements in question. Even if Defendant was in custody, the government asserts that the agents fully complied with *Miranda* and obtained a valid waiver of Defendant's rights before he made any statements. Finally, the government argues that Defendant's statements were not procured through threats or other coercive behavior.

A defendant may not be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, the Supreme Court held that a suspect subject to custodial interrogation, "must first be given notice of his or her right against self-incrimination." *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003). Statements obtained in violation of *Miranda* may not be used for certain purposes at a criminal trial against the defendant. *Miranda*, 384 U.S. at 479; *Swanson*, 341 F.3d at 528. Nevertheless, the obligation to advise the defendant of his *Miranda* rights only arises where "there has been such a restriction on a person's freedom as to

render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam).

As a threshold matter, the Court must determine whether Defendant was entitled to *Miranda's* protections. There is little doubt that an interrogation took place; however, Defendant would not be entitled to any warnings if the interrogation was not custodial. Therefore, the issue is whether Defendant was in custody for purposes of *Miranda* when he was questioned in a Suburban vehicle by three law-enforcement officers outside of his residence.

A person is in custody for purposes of *Miranda* where he "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 471. This test is purely objective, and involves two discrete inquiries: (1) "what are the circumstances surrounding the interrogation"; and (2) "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Yarborough v. Alvarado*, 541 U.S. 562, 662 (2004). When undertaking these inquiries, the Court should consider

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated the contact with the police ... [or] acquiesced to their requests to answer some questions.

*Swanson*, 341 F.3d at 529.

The court in *United States v. Harlan*, 253 Fed. Appx. 599 (7th Cir. 2007), was confronted with facts very similar to those in the present case. In *Harlan*, the defendant voluntarily accompanied three DEA agents to a vehicle and agreed to answer questions regarding his involvement in a drug ring. Once in the vehicle, the agents drove the defendant from his place of business to a residential area; the agents also informed the defendant that he was the subject of an

investigation but that he was not under arrest and could end the interview any time he wanted. After forty-five minutes of questioning, the defendant made incriminating statements; the agents never delivered his *Miranda* rights. On these facts, the Seventh Circuit held that the defendant was not in custody and, therefore, not entitled to *Miranda* warnings. In analyzing the custody issue, the court gave significant weight to the fact that the agents told the defendant he was not being arrested. Although the agents moved the defendant in a police vehicle, he was never handcuffed, threatened or shown any weapons. Moreover, the defendant voluntarily chose to speak with the officers and was interviewed in a setting that was readily accessible to the public. Accordingly, the court concluded the defendant was not in custody.

Based on the circumstances of this case, the Court finds that Defendant was not in custody for purposes of *Miranda* when he was questioned on May 10, 2007. In making this determination, the Court credits Agent Coleman's testimony regarding the cordial atmosphere of the interview and the fact that the agents informed Defendant, repeatedly, that he was not under arrest. Indeed, the Court finds the fact that Agent Coleman specifically informed Defendant that he was not being arrested prior to entering the Suburban is particularly significant and weighs heavily against finding that Defendant was in custody. *See Swanson*, 341 F.3d at 530. As the *Swanson* court recognized, "a statement by a law enforcement officer to a suspect that he is not under arrest is an important part of the analysis of whether the suspect was in custody." *Id.* (quoting *United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1998)).

The agents in the present case asked Defendant if he would answer questions concerning the rifle that was recovered during the execution of the search warrant. Defendant, like the defendant in *Harlan*, agreed to answer questions and voluntarily accompanied the agents to their vehicle. The

6

agents, just as in *Harlan*, informed Defendant that he was not under arrest and did not accuse him of any crime. Similar to *Harlan*, the officers questioned Defendant in the Suburban on a public street and in view of the residence at which he was staying. The mere fact that multiple agents were present does not dictate that the environment was hostile or coercive. *See Harlan*, 253 Fed. Appx. at 602. According to Agent Coleman, the atmosphere remained cordial throughout the interview. What is more, unlike *Harlan*, the agents in the present case never moved Defendant. Rather he remained within view of his own residence at all times. Consequently, the conclusion that Defendant was not in custody is even more compelling in this case than in *Harlan*. Finally, the interview was relatively brief. *See United States v. Thomas*, 142 Fed. Appx. 896, 900 (6th Cir. 2005). Therefore, the Court finds that this environment was not particularly hostile or coercive, which strongly indicates that Defendant was not in custody.

Other pertinent facts indicate that Defendant was not in custody. First, Defendant voluntarily agreed to answer questions and voluntarily accompanied the officers to their vehicle. *See United States v. English*, No. 07-00436, 2008 WL 351209, at *4 (D. Haw. Feb. 7, 2008) (concluding the defendant was not in custody where he voluntarily accompanied the agents to their office). Second, Defendant retained his freedom of movement: he was never placed under arrest, handcuffed, or otherwise physically restrained. *See Salvo*, 133 F.3d at 951 (finding that the defendant had "complete freedom of movement" where he was neither handcuffed or otherwise physically restrained, nor placed under arrest, threatened with arrest or told to stay put). Third, there is no indication that Defendant used coercive tactics or blocked Defendant's means of egress from the vehicle. *See United States v. O'Brien*, 498 F. Supp. 2d 520, 542 (N.D.N.Y. 2007) (concluding the defendant was not in custody where there was "no physical abuse or psychological coercion, no

7

threats, no material misrepresentations, or affirmative acts of trickery or deceit"). Finally, following the brief interview, the officers allowed Defendant to leave the vehicle and return to his home, which is a strong indication that Defendant was not in custody. *See Salvo*, 133 F.3d at 952 (finding the defendant's freedom of movement after the interview mitigated against the possibility that he would feel in custody); *English*, 2008 WL 351209, at *3 (quoting *United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) (en banc)) (reasoning that the defendant's ability to leave after being questioned at a law-enforcement office suggests that the questioning was not custodial). In sum, these facts weigh against a finding that Defendant was in custody. In fact, these circumstances reflect an environment that is substantially less custodial than in other cases where courts have determined a defendant was not entitled to *Miranda* warnings. *See California v. Beheler*, 463 U.S. 1121, 1125-26 (1983) (per curiam) (finding the detainee was not in custody where the questioning took place in a police station); *Mathiason*, 429 U.S. at 495-96 (questioning at State Police offices behind closed doors not a custodial interrogation where the defendant was informed he was not under arrest and was allowed to leave at the conclusion of the interview); *Mason v. Mitchell*, 320 F.3d 604, 632 (6th Cir. 2003) (concluding the defendant was not in custody where he was transported to a police station in a police car but voluntarily agreed to answer questions, was told he was free to leave, and was not under arrest during the interview); *Salvo*, 133 F.3d at 951 ("[A]lthough [the interview] took place in Agent Williamson's car outside the restaurant, this alone is not enough to convert the interview into a custodial interrogation, as this ... was a very public place, and the interview was done in a non-coercive way."); *Thomas*, 142 Fed. Appx. at 900 (finding the interview environment was not hostile or coercive where the defendant was questioned in a police car, on a public street, and without handcuffs).

Defendant's argument to the contrary is based on his subjective belief that he was not free to leave the vehicle and would be arrested for a probation violation. This argument, however, is devoid of merit. Defendant's subjective belief that he was not free to end the interview and leave is irrelevant to determining whether or not he was in custody. *See Yarborough*, 541 U.S. at 663 (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam)) (explaining that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by ... the person being questioned"). What is more, even if Defendant was not objectively free to leave, that fact alone is not dispositive of whether he was in custody for purposes of *Miranda*. *See Swanson*, 341 F.3d at 529 (finding that even where the defendant was not free to leave, "the restraint exercised never reached the level associated with 'formal arrest or a coercive context tantamount to custody'"). Accordingly, the totality of the circumstances lead to the conclusion that Defendant was not in custody. Defendant has likewise failed to present any evidence that his statements were coerced or involuntary. Therefore, the Court denies his motion to suppress.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that Defendant was not in custody at the time of the interview in question and was, therefore, not entitled to *Miranda* warnings. Accordingly,

IT IS ORDERED that Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

                                      S/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

Dated: August 7, 2008

## CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 7, 2008.

                                      S/Marie E. Verlinde
                                      Case Manager
                                    (810) 984-3290